# McQueen *v.* Whetstone, Admr. *et al.*

| 12/ | 417 |
| 131 | 476 |
| 127 | 417 |
| 134 | 562 |
| 127 | 417 |
| s137 | 303 |
| 137 | 314 |
| 127 | 417 |
| 141 | 641 |

*Bill in Equity to redeem Land Sold under Mortgage.*

1. *Redemption; one tenant in common can redeem whole property.*
   Where the equity of redemption is owned by several persons
   as joint tenants, or tenants in common, one of them may
   redeem the whole property and is entitled to the possession
   of the property and a receipt of all the rent; but one of sev-
   eral tenants in common can not redeem his moiety only, with-
   out redeeming the whole of the property.

2. *Decree; chancellor without power at subsequent term to set
   aside final decree.*—A chancellor has no power to set aside and
   vacate  or amend or alter, at a subsequent term, a final decree
   rendered at a former term, although matters of account in the
   case may still be pending in the reference to the register.

3. *Redemption; right of mortgagees to be refunded for money paid
   by them as sureties.*—On a bill filed to redeem land sold under
   a mortgage, which was executed to the mortgagees to hold
   them harmless as sureties on notes given by the mortgagor
   to third parties, the mortgagees can not claim anything out
   of the mortgaged property as against the party seeking to re-
   deem, unless they show that they have been or may be dam-
   nified on account of their suretyship.

27

[McQueen v. Whetstone, Admr. *et al.*]

4. *Register's report; when should not be disturbed.*—When the conclusions of the register are drawn, not only from depositions, but also from the oral examination or pleadings before him, the same weight and effect should be given and accorded to his findings, as is given to the verdict of a jury; and if from the whole evidence it is a matter of reasonable doubt whether his findings are correct, they should not be disturbed.

5. *Bill for redemption; allowance for improvement.*—In the redemption of property sold unuer a mortgage, the mortgagee will be allowed to retain from the rents and profits the value of reasonable expenditures made for taxes and necessary repairs incurred on account of the estate, but not for unreasonable improvements.

6. *Same; sufficiency of prayer to authorize judgment against respondent for rents and profits.*—On a bill filed to redeem land sold under a mortgage, where the prayer is that the complainant may be decreed "entitled to redeem said lands and entitled to the possession of said lands * * * upon paying and discharging any sum due under the mortgage * * * all of which she offers and submits to pay so far as this court may decree and deem to be just, fair and equitable; and that an account may be stated between the mortgagee and complainant upon said redemption, wherein the persons properly chargeable therewith may be charged with the value of the use, occupation and rent of said lands, * * * and complainant may have a decree therefor against the parties liable therefor," etc., such prayer is sufficiently comprehensive to authorize a decree against the respondent for whatever it may be ascertained he is indebted for rents and profits to the complainant.

7. *Same; computation of interest; register in stating account should follow statute.*—Where partial payments have been made, the statute furnishes the only rule which can be recognized for the computation of interest, which is, that "the interest due is first to be paid, and the balance applied to the payment of the principal," (Code, § 2629); and in stating an account the register should follow this rule.

APPEAL from the Chancery Court of Autauga.
Heard before the Hon. RICHARD B. KELLY.

The bill in this case was filed September 25th, 1895, by the appellant, Lola McQueen, against W. D. Whetstone as the administrator of Mills Rogers, deceased; Maude Rainey and Mackev Davis, children and heirs at

law of Mills Rogers, and W. H. Hunt as administrator
of the estate of Jacob Faber, deceased, and the heirs of
said Jacob Faber; and sought to redeem certain lands
from a mortgage debt, which lands are specifically de-
scribed in the bill.

The complainant and her two brothers, Atwood B.
and Claude McQueen, were the only children and heirs
at law of James D. McQueen, who died intestate, in
Autauga county, on the 7th of October, 1876. The said
James D. McQueen was the owner of the lands in ques-
tion, and died in possession of them. On the 22d of
February, 1876, he executed and delivered to said Mills
Rogers and Jacob Faber, a mortgage on said lands, to
secure them against loss from signing certain notes,
due one year thereafter,—the 22d of February, 1877,—
as his sureties, and to secure said Jacob Faber, for ad-
vances which he might make to him, McQueen, during
1876, to enable him to make a crop.

On the death of said McQueen, said Jacob Faber and
John L. Alexander, were, on the 7th of December, 1876,
duly appointed as his administrators by the probate
court of Autauga county.

It is averred in the bill, that upon the death of said
McQueen, the mortgagees, Rogers and Faber took pos-
session of the lands mortgaged, on the 1st of January,
1877, and have since remained in possession of them,
through themselves, or their representatives, as mort-
gagees, receiving the rents and profits; that the rents
and profits and the assets of the estate, received by the
mortgagees, have fully paid the mortgage debt, and that
defendants, claiming under such mortgagees, have no
title to the lands; that said Mills Rogers died intestate,
on the 18th of July, 1888, and W. D. Whetstone was
duly appointed as his administrator by the probate
court of Autauga county; that said administrator of
said Rogers, went into possession of said lands, upon
the death of his intestate, and he and the heirs of Rog-
ers, Maude Rainey and Mackey Davis, have held the
same since the death of said Rogers, who up to the date
of his death had held possession of them.

It is averred, that there never was any due foreclos-
ure of said mortgage under the power contained therein;

that said administrators applied for an order to sell the equity of redemption of complainant and her brothers in said lands, and obtained the same from said probate court, and pretended to sell the same for the sum of $580, which was paid by said Rogers, but that said order and sale, for reasons assigned, were wholly void. It was shown that Mackey Davis conveyed her interest in said lands to defendant, Maude Rainey.

It was further shown that said Jacob Faber died May 13th, 1895, and one W. H. Hunt was duly appointed as his administrator. Said Faber left several minor children, whose ages and residences were given, and they, with said Hunt as administrator of Faber, and said Whetstone as administrator of said Mills Rogers, and said Mackey Davis and Maude Rainey and the heirs of said Faber, together with said Atwood B. and Claude McQueen, the brothers of complainant, were made parties defendant to the bill.

The prayer of the bill is (to quote its language) that complainant "may be deemed to be entitled to redeem the said lands, and entitled to the possession of said lands of her said father, upon paying and discharging any sum due under the said mortgage, or under the sale of said equity of redemption, or otherwise, upon any just account whatever, all of which she offers and submits to pay, so far as this court may decree and deem to be just, fair and equitable; and that an account may be stated between the said mortgagees and oratrix, upon such redemption, wherein the persons properly chargeable therewith, may be charged the value of the use and occupation and rents of said lands, since the 1st of January, 1877, and oratrix may have a decree therefor against the parties liable therefor, and that said mortgage may be declared satisfied," and for general relief.

The defendants Mackey Davis and Maude Rainey filed separate demurrers to the bill, which were overruled.

The other defendants answered—Atwood B. and Claude M. McQueen, admitting the allegations of the bill, and consenting that the complainant have the relief prayed for; the Faber children, by their guardian *ad litem,* de-

nying the allegations of the bill. The administrator, Whetstone, admitting his appointment as administrator of said Rogers, denied the charges in the bill, stating that he took possession of the property of which his intestate died seized and possessed, and afterwards, made a final settlement of his administration of said estate in said probate court, and was discharged of said administration. Hunt denying knowledge or information of many of the matters alleged, called for proof of the same. He admits that he is the administrator of said Faber's estate; admits the death of Faber, as stated and the names and ages of his children, and states, that as administrator, he has been unable to find or get possession of any property belonging to said estate, and holds no assets or property of the same.

The defendants, Maude Rainey and Mackey Davis, made the defense relied on, and denied generally, the material allegations of the bill,—such as that said Rogers was ever in possession of said property as mortgagee, denied his possession at any time, until he had purchased the same under foreclosure of the mortgage under its power, and the sale of the equity of redemption therein, and admitted that their said father, until his death, and afterwards his administrator, and then they, were in possession of said lands claiming the same as their own adversely to complainant, and stated that they have been so claiming the same, as complainant well knew, since the year 1877.

Testimony was taken on both sides, and the cause was duly submitted on pleadings and proofs.

The chancellor rendered his decree at the spring term of the chancery court, 1896, holding that complainant was entitled to redeem as she prayed in her bill, and she was let in and allowed to redeem the lands described in the bill, upon the payment by her to respondent of whatever might be ascertained to be due and unpaid on said mortgage, with the interest thereon. A reference was ordered to the register to state an account between complainant and respondents, charging her with the amount paid by said Mills Rogers, deceased, for the equity of redemption with the interest thereon; also

with the taxes paid by respondent on said lands and the interest thereon, and also, with any portion of the mortgage debt held by respondents, or for which they are liable and not otherwise discharged, and interest thereon. It was ordered that the administrator of Mills Rogers, deceased, be charged with the rents, or the value of the use and occupation of the premises, from January, 1877, down to and including 1891, when he made his final settlement and was discharged, as the administrator of said Rogers; and that he ascertain what rents or profits arising from said lands have been received by the respondent, Maude Rainey, from the 1st of January, 1892, down to the taking of the account; also, what assets and the value thereof, of the estate of Mills Rogers, deceased, descended to his heirs at law, and that he consider, in holding his reference all competent legal proofs that might be offered on either side, and make report in the premises to the next term of the court.

From this decree, an appeal was prosecuted by defendants to the next term of the Supreme Court. At the November term, 1898, the Supreme Court rendered its decision affirming said decree.

Thereupon the register, in accordance with said final decree of the court below, held his reference, at which the parties appeared and introduced the evidence already taken and much other.

The register filed his report, to which the complainant and defendants, each, filed separate exceptions. The other facts of the case are sufficiently stated in the opinion.

At the September term, 1899, the cause was again submitted to the court upon said exceptions, and in January following, the case having been held up for decree, the chancellor rendered his decree thereon.

In this decree, it was held, that the complainant was not entitled to redeem more than one-third undivided interest in said lands, for that, the two other heirs of said McQueen—Atwood B. and Claude M. McQueen—were barred of their right to repudiate the foreclosure sale and redeem the property, and that complainant

[McQueen v. Whetstone, Admr. *et al.*]

was entitled on redemption to charge the defendants with but one-third of the rents and profits of said lands. He also corrected the report of the register in other particulars in his statement of the account. From this decree, the appeal is prosecuted, and its rendition is assigned as error.

GUNTER & GUNTER, for appellant.—A final decree once entered and the term of court ended, can not be altered by any subsequent order.—*Adams v. Sayre*, 76 Ala. 515; *Ansley v. Robinson*, 16 Ala. 793.

A final decree once entered and then affirmed by the Supreme Court can not be altered in any substantial manner whatever by any court, and especially can not be altered by an inferior court.—Elliott on Appellate Procedure, §§ 576-8; *Lyon v. Foscue*, 60 Ala. 468; *Cochran v. Miller*, 74 Ala. 50. The rule is as absolute as destiny itself that a final decree being once entered by the Supreme Court, though by a mere affirmance, the lower court is bound to carry out the decree. It can neither add to nor detract from the rights thus determined, though, of course, it may vary or change the means of accomplishing what is decreed.—*Adams v. Sayre*, 76 Ala. 515; *Gaines v. Rugg*, 148 U. S. 228; *Werborn v. Pinney*, 76 Ala. 291; *Wiswell v. Munroe*, 4 Ala. 9-19; *Stevens v. Norris*, 15 Ala. 79; *Norris v. Cottrell*, 20 Ala. 304; *McArthur v. Dane*, 61 Ala. 539; 3 Am. Dig. (Century ed.), p. 2750, § 4668; *Lyon v. Foscue*, 60 Ala. 468.

A mortgagee in possession is, after his debt and lawful charges are paid, a bailee without hire for the mortgagor or those having the right to redeem, and has no further interest in the property.—*Blake v. Foster*, 2 B. & B., 403; *Quarrell v. Beckford*, 1 Madd. Rep. 269. The mortgagee in posession then as mortgagee receives the rents for himself until he is paid, and then they belong to the reversion. And when a party comes representing the equity of redemption and redeems, the whole rents as inevitably go with the reversion as the shadow follows the substance.—*Ruckman v. Astor*, 9 Paige, 517; *Hubbell v. Moulson*, 53 N. Y. 228; *English v. Key*,

39 Ala. 113; 3 Powell on Mortgages, 946-959; *Blake v. Foster*, 2 Ball & Bea. 403.

It it be shown that certain rents were received for a given portion of the time of holding, the presumption will be indulged in the absence of proper accounts, that the rents were the same for the entire term.—3 Powell on Mortgages, 949b; 27 Encyc. of Law, 16, and notes; *Blake v. Foster*, 2 Ball & B. 403.

In such case, of a right in the mortgagee to elect, an election once made is binding, and especially so when a final decree has been affirmed which is based on such election; after which a lower court is powerless to elect that the mortgagor shall only redeem a part, even at the instance of the mortgagee.—*Adams v. Sayre*, 76 Ala. 515; Elliott on Appellate Procedure, §§ 576-7.

A mortgage debt is a unit, and the property mortgaged can not be redeemed by anyone, though he own any divisable interest, without payment of the whole debt. So the equity of a redemption is a unit, and a person redeeming stands as the assignee of both mortgagee and mortgagor.—2 Jones on Mortgages, §§ 1055, 1063, 1072; *Gliddon v. Andrews*, 14 Ala. 733; *Jones v. Matkin*, 118 Ala. 341; 3 Pom. Eq. Jur., §§ 1212-13, 1220; *Hubbard v. A. M. Dam. Co.*, 50 Am. Dec. 41.

An indorser on a plain note which is unaccounted for, for more than twenty years after maturity, must be regarded as no longer liable for his indorsement. The note will be presumed to have been paid by the maker. *Dawson v. Hoyle*, 58 Ala. 44; 1 Brick. Dig., 806-8, §§ 38, 65, 66, 67.

WATTS, TROY & CAFFEY, *contra.*—When Rogers and Faber foreclosed the McQueen mortgage and Rogers became the purchaser, it could not be contended that the sale was void. It was merely voidable. "So long as the foreclosure sale stands, and no affirmative steps are taken to avoid it, the purchaser, although he is the mortgagee, *must be regarded as the owner of the land,*" subject only to the right of the mortgagor seasonably expressed to disaffirm the sale.—*Sewell v. Am. F. L. M. Co.*, 92 Ala. 168; *Mortgage Co. v. Turner*, 95 Ala. 275. What is a

reasonable time within which to thus disaffirm such sale must ordinarily be exercised by an adult, has, by analogy to the statute giving that period to redeem after a valid foreclosure, been held to be two years from the date of sale.—*Ezell v. Watson,* 83 Ala. 120; *Comer v. Sheehan,* 74 Ala. 452; *Alexander v. Hill,* 88 Ala. 487. The whole theory of the limitation, therefore, rests upon the presumption of *ratification* of the sale after the lapse of two years, and this presumption is maintained against every person who was *sui juris* at the time of the sale.—*Alexander v. Hill,* 88 Ala. 487.

If a person having the right to redeem, was, at the time of the sale, a minor and neglected for two years after reaching his majority to disaffirm the sale, it would likewise be presumed that he had ratified the sale and was barred from any right to redeem.—*Alexander v. Hill,* 88 Ala. 487; *McGough v. Sweetser,* 97 Ala. 364.

The true rule, and the one which is in harmony with the decision of the chancellor, and, it would seem, with common sense, is "If one of the co-tenants, by reason of his minority, retains the right to redeem the property after his co-tenants have lost such right by lapse of time, either he or his successor in interest may make such redemption, *but it must be confined to the interest of the minor,* and cannot enure to the benefit of the other co-tenants."—Freeman on Co-Tenancy, § 176; *Kirkpatrick v. Matheod,* 4 Watts & S., 251.

The complainant in her bill comes in humbly saying that, while she was a baby, these wrongs were done, and she prays that she may pay what is due and be let in to redeem. She does not ask for judgment over if the rents should be more than the mortgage debt. It has been held that the mortgagee, filing a bill to foreclose, is not entitled to a decree over for the balance of the debt remaining unpaid after the sale of the mortgaged lands, *unless the bill prays for such relief.* A like rule should be applied here. As no decree for surplus rents was prayed for, none can be allowed.—*Spoor v. Philipps,* 27 Ala. 193; *Sanford v. Octaloni,* 23 Ala. 669. The law does not allow complainant to have a decree for rents accruing after the rents have equalled the mortgage

debt.—*Spoor v. Phillips*, 27 Ala. 193; *Weathers v. Spiers*, 27 Ala. 455; *Parmer v. Parmer*, 74 Ala. 288. The defendants should have been allowed the improvements.—*Posey v. Pressley*, 60 Ala. 243; *Parmer v. Parmer*, 74 Ala. 285. The mortgagee in posession is entitled to permanent improvements, especially where he is under the belief that he has acquired the title.—Jones on Mortgages, 1128.

HARALSON, J.—1. It was decided by the former decree in this case, that the complainant was entitled to redeem the whole land; that the administrator of Mills Rogers, deceased, was chargeable with the rents, or with the value of the use and occupation of the premises from January 1, 1877,—the time it was shown the said Rogers went into the possession of them,—down to and including the year 1891, when he made his final settlement and was discharged as administrator of said Mills Rogers, and that the register should also ascertain and report what rents and profits arising from said lands had been received by the respondents, from the 1st of January, 1892, down to the taking of his account.

On the decree upon the report of the register, now appealed from, the present chancellor, corrected and modified the decree of the former chancellor,—which decree was here affirmed,—to the extent of holding, that the complainant was entitled to redeem only one-third of the lands, and was entitled to credit on the mortgage for only one-third of what remained due thereon, if anything, and to one-third of what was due in any event, and further that she was entitled to but one-third of the rents.

The case was submitted the last time, on the same pleadings as on the former trial, and on the same evidence as touching the correctness of the former rulings on the right of complainant to redeem the entire premises, and her right to the entire rents; and also on other testimony taken before the register on the reference touching the matters of account referred to him. There is nothing, therefore, before the court on this appeal, either in the pleadings or in the evidence, as to the right

of complainant to redeem the entire premises, and as to her consequent rights to the entire rents, that did not appear on the former trial when these questions were passed on, which decree was affirmed. That ruling was in accordance with the general principles of equity as found in the text-books, the decisions of the courts of other States, and of our own court. The principle recognized in that adjudication, is the same as that expressed by Fish. Mortg., § 164 : "If the equity of redemption be the property of several persons as joint tenants, or tenants in common, one of them may redeem; each, as against an incumbrancer, and subject to account with his co-tenant, being entitled to possession and receipt of the whole of the rents. But it seems that one cannot redeem his moiety only; for this would be contrary to the principle that a mortgage is to be redeemed entirely or not at all." Again, in section 246, to the same effect, the author states, that the "tenant in common is entitled to redeem the whole estate, as against an incumbrancer, and subject to an account with his co-tenant, he is entitled to the whole rent." See also 3 Pom. Eq. Jur., §§ 1212, 1213, 1219, 1220; 2 Jones, Mortg. §§ 1055, 1063-1072; 2 Story, Eq. Jur., § 1023; *Jones v. Matkin*, 118 Ala. 341; *McGough v. Sweetser*, 97 Ala. 361; *Ohmer v. Boyer*, 89 Ala. 273, 279; *Rainey v. McQueen*, 121 Ala. 191; *Lehman, Durr & Co. v. Moore*, 93 Ala. 186; 17 Enc. Pl. & Prac. 948.

It is insisted by defendants, that the complainant was entitled to redeem only a third of the lands, for the reason, that her two co-tenants were barred of their right to redeem, by virtue of the fact that they neglected for more than two years after they attained their majority, to seek to redeem, and the chancellor so held.

Rule 84 of chancery practice prescribes that "A final decree shall not be called in question, before the court rendering it, after the adjournment of the term when rendered," etc. The power of the court at a subsequent term, therefore, to modify or change the former decree in this cause, in the manner it was done, seems to be forbidden by this rule of the chancery court. The former decree which was final as to the equities between

the parties, was the law of the case until afterwards set aside, and in all after proceedings in the cause in the chancery court it was binding and should have been adhered to. Section 3840 of the Code, providing, that "The Supreme Court, in deciding each case, when there is a conflict between its existing opinion and any former ruling in the case, must be governed by what, in its opinion at that time is law, without any regard to such former rulings on the law by it," is applicable to the Supreme Court alone, on a second appeal in the same case, when it may review or set aside any former opinion of its own therein.—*Stoudenmire v. DeBardelaben*, 85 Ala. 85. The question presented, therefore, as to the right of complainant to redeem the whole estate, and her right to the entire rents, is concluded by the former decree herein which was affirmed by us, and we find no occasion for reviewing said decree on this appeal. The complainant now simply seeks to have said former decree carried into effect, against the power of the chancellor at a subsequent term to review and set it aside; and this is her right.—*Herstein v. Walker*, 90 Ala. 477; *Ex parte Creswell*, 60 Ala. 378; *Owens v. Bankhead*, 82 Ala. 399; *Smith v. Coleman*, 59 Ala. 260.

2. The mortgage was given to secure Rogers and Faber, as sureties of the mortgagor, McQueen, on eight promissory notes, each executed on the 22d February, 1876, and payable on the 22d February, 1877, and also to secure Faber for advances to be made to the mortgagor during 1876 to enable him to make a crop. In this latter aspect, the mortgage was for the benefit of Faber alone, and he was the sole mortgagee as to whatever advances were made by him to McQueen, the mortgagor. The register in his report very correctly stated, that "there could have been no liability on said Mills Rogers under this mortgage to the said Faber for advances made to said McQueen, during the year 1876, hence there could be no liability on the respondents. The personal representatives of both the said Faber and the said Rogers are parties respondent to the bill in this cause, and claim nothing for advances." The question of advances by Faber to McQueen, so far as it af-

fected the rights of complainant under her redemption and the representatives of Rogers, may, therefore, be allowed to pass from view.

The notes for which Rogers was liable as one of the sureties for McQueen were, as stated, one to M. E. Pratt, guardian, for $85.64; one to W. H. Northington, guardian, for $242.64; one to A. C. Vincent, for $233.14; one to E. M. Pratt, for $134.42; one to C. C. Smith, for $248.14; and three others to be referred to hereafter. The above described notes are found in the account of said Faber, as administrator of McQueen, allowed him as credits on final settlement of the estate as having been paid by him, and it was admitted on the trial, that said notes "were paid out of the assets of the estate of said J. D. McQueen."

It was further admitted that said administrators did not get credit for the other three notes included in said mortgage, viz., one to J. D. Merritt, for $202.14; one to N. B. Merritt, for $230.64; and one to G. A. Northington, as administrator of McQueen's wife, for $221.63.

The register in his report says as to these notes: "It appears to the register, that complainant should be charged with the notes embraced in said mortgage, that are not shown to have been paid out of the assets of the estate of said J. D. McQueen, deceased, to-wit [describing them as above], amounting to $656.41"; and he debits complainant with that amount in his account, as due on the said mortgage, and this ruling the chancellor sustained, as far as it went, but corrected the amount by making it $1,684 instead of $656.41 as found by the register.

In this we apprehend both the register and the chancellor fell into error. It is admitted that the administrators of McQueen did not get credit in their account of settlement of the estate for said notes, amounting to $656.41. It is manifest, therefore, that they had not paid them, or they would have taken credit for the payments, as they did for those notes they had paid, and the evidence is lacking satisfactorily to show, that Rogers ever paid either of these notes. The chancellor does not give his reasons in detail for the ruling he made

ascertaining the amount due on the mortgage debt. He simply made the general statement: "As to the amount due on the mortgage debt at the time of the foreclosure in 1877, I am reasonably satisfied that the amount as found by the register is incorrect. I think the testimony of Sadler on that point is correct. I think his opportunity of knowing what was due on the mortgage is better than that of any other witness who testified in the case. He is corroborated also by the testimony of J. L. Alexander and M. Hirscher." He accordingly directed the register to charge complainant with $1,684 as of March (April), 20, 1877, instead of with the sum of $656.41 as found by the register, as remaining due on said mortgage, as of that date, and this, notwithstanding the fact, that the first five notes mentioned in the mortgage, amounting to $943.98, had been paid, as was admitted, out of the assets of the estate of said McQueen. He evidently failed to notice this admission of counsel. The question as to crediting Rogers was not what was the amount of the debt the mortgage secured, but what remained due on it, and what amounts, if any, Rogers had paid thereon.

T. W. Sadler testified that "he knew that Mills Rogers and Jacob Faber held a mortgage on the lands and personal property of J. D. McQueen in Autauga county, and that said mortgage contained a power of sale and was due on the 22d of February, 1897, for abount $1,684.02." This was in answer to the questions: "Do you know anything about the mortgage executed by the ancestor of complainants to said Rogers and Faber? If so, state what you know." The answer was a mere statement in description of the mortgage and the amount it secured, and was not a statement of what was due on it as a matter of fact, for this he could not well know.

We have examined the evidence of these three witnesses, referred to by the chancellor. It is about matters resting in their memory, occurring about 20 years previously, and is confused and irreconcilable. We are unable to conclude from it, that Rogers ever paid either of said notes. One of them was payable to G. A. North-

ington, administrator of McQueen's wife, for $221.63, and we find in Faber's account, on settlement of the estate of McQueen, a credit of $185, which tends to support the payment of this note by Faber. J. D. Alexander, who was one of the administrators of McQueen, testified that these payments to G. A. Northington, were on account of the notes mentioned in said mortgage. Another of the notes was payable to N. B. Merritt, for $230.64; and Hirscher, in his testimony, states that J. D. McQueen was indebted to Faber for advances from $900 to $1,000, and he knew that N. B. Merritt left with Faber some notes or security that said McQueen owed Merritt; that Faber took a note for between $200 and $250 as collateral, and placed it to the credit of said Merritt, and afterwards got the money on it. All this tends to show, in the absence of the evidence to the contrary, that these notes were never paid by Rogers, and, like the other five, were improperly charged to complainant by the register.

As to all these notes signed by Rogers and Faber as securities for McQueen, it may be said, that neither Rogers nor Faber in their lifetime, nor their representatives after them, can claim anything out of the mortgaged property, unless they show they have been or may be damnified on account of their suretyship on them, and this could not possibly be the case after a lapse of more than 20 years since the maturity of the notes. *Dawson v. Hoyle*, 58 Ala. 44; *Phillippi v. Phillippi*, 61 Ala. 41.

3. There were twenty-odd witnesses examined as to the value of the annual rents of the property. About a dozen of these place it at $225 or less, some as low as $100, but more at $150. Others for the complainant place it as high as $250, $300, $400 and $500. The register, from the evidence taken on oral examination of witnesses before him, with opportunities of observing the fairness or unfairness with which they deposed, their interest and prejudice or the lack of them on the one side and the other, and their opportunities for forming a correct and fair judgment, placed the annual rent at $250. The same weight and effect ought to be accorded to his findings which would be given to the ver-

dict of a jury. If from the whole evidence it was a matter of reasonable doubt whether the finding was correct, or if different persons equally impartial and intelligent might entertain different opinions as to the matter, the finding ought not, for these reasons, to have been disturbed.—*Vaughan v. Smith*, 69 Ala. 92. We are unable to conclude, on an examination of the evidence, that the chancellor was justified in setting aside the finding of the register, and fixing the rents at a lower rate per annum. Nor can we sanction the contention of the complainant that there was error in not assessing the rents at a higher rate. His finding should stand.

4. The rule as to improvements on land by the mortgagee, as stated by Mr. Jones, is: "That the mortgagee will not be allowed for them further than is proper to keep the premises in necessary repair. Unreasonable improvements may be of permanent benefit to the estate; but unless made with the consent and approbation of the mortgagor, no allowance can be made for them. The mortgagee has no right to impose them upon the owner, and thereby increase the burden of redemption. The improvements will inure to the benefit of the estate upon redemption, but in the meantime the mortgagee has the use of them."—2 Jones, Mort., § 1127; 15 Am. & Eng. Enc. Law, 825. "It is unquestionably the duty of a mortgagee in possession to preserve the property in ordinary repair, and prevent it from going to waste. If he commits waste himself, he is liable for the damage suffered by the mortgagor."—*Perdue v. Brooks*, 85 Ala. 462. "Reasonable expenditures for taxes, necessary repairs, and other necessary expenses incurred on account of the estate, the mortgagee is allowed to retain from the rents and profits, and it is the balance only that can be applied in extinguishment of the mortgage debt." *Keith v. McLaughlin*, 114 Ala. 63, and authorities there cited. These rules will serve the purpose of a proper ascertainment of improvements, repairs and waste, should these questions arise on another reference.

5. The prayer for relief in the case is comprehensive, and sufficient for a decree over against respondent for whatever it may be found she is indebted for rents and

[Moses v. Philadelphia Mortgage and Trust Co. *et al.*]

profits, if any, to the complainant.—Code, § 859; *Presley v. McLean,* 80 Ala. 311; *Peck v. Ashurst,* 108 Ala. 429, 439; *Merrill v. Witherby,* 120 Ala. 418; *Wells v. Mortgage Co.,* 123 Ala. 413; 26 So. Rep. 301.

In stating the account, the register should make annual rests, and proceed under section 2629, in making application of partial payments.—*Bryant v. Craig,* 12 Ala. 355; *Blum v. Mitchell,* 59 Ala. 535.

We have passed on all the questions necessary to be noticed for taking the account under the two decrees for a reference, and upon all the questions necessary to be reviewed to that end under the last decree.

Reversed and remanded.

